IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| WILLIE BERNARD COE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 117-156 |
| | ) | |
| KEVIN SPRAYBERRY, Warden,[1] | ) | |
| | ) | |
| Respondent. | ) | |

_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Petitioner, an inmate at Hays State Prison in Trion, Georgia, brings the above-captioned petition pursuant to 28 U.S.C. § 2254. Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I. BACKGROUND

This case challenges the validity of Petitioner's conviction for malice murder, felony murder, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon, as determined by a jury in the Superior Court of Richmond County, Georgia, after a trial conducted from August 11, 2009, through August 13, 2009.

---

[1]The Court **DIRECTS** the **CLERK** to update the docket by designating Kevin Sprayberry as Respondent because he is the Warden of Hays State Prison, Petitioner's present place of incarceration. Additionally, the Court **DIRECTS** the **CLERK** to update Petitioner's address on the docket to Hays State Prison, his present place of incarceration, to ensure Petitioner receives service copies of the Court's Orders.

Coe v. State, 748 S.E.2d 824, 825 & n.1 (Ga. 2013).  On August 13, 2009, the trial court sentenced Petitioner to life imprisonment for malice murder, five consecutive years for possession of a firearm during the commission of a felony, and five consecutive years for possession of a firearm by a convicted felon.  Coe, 748 S.E.2d at 825, n.1.  The felony murder merged into malice murder.  Id.  Attorney Debra Neumann represented Petitioner at trial.  (Doc. no. 11-4, p. 117.)

Attorney Charles A. Jones, Jr., represented Petitioner post-conviction and filed a motion for new trial, which the trial court denied.  (Id. at 113.)  Mr. Jones filed a direct appeal and raised four enumerations of error:  (1) the evidence at trial was insufficient to support the verdict for malice murder; (2) the trial court erred by attempting to rehabilitate a juror who grew up with the victim's wife instead of dismissing the juror; (3) the trial court erred by failing to sever the trial because Petitioner and his codefendant Dennis Mingledolph's defenses were antagonistic; and (4) the trial court erred by allowing the State to elicit testimony regarding Petitioner being on parole.  Coe, 748 S.E.2d at 826-28; (doc. no. 11-8, pp. 120-36.)  The Georgia Supreme Court found no merit to the alleged errors and affirmed the judgment on June 17, 2013.  Coe, 748 S.E.2d at 826-28.

In its opinion, the Georgia Supreme Court provided the following description of facts about the murder based on the evidence offered against Petitioner at trial:

> [A]pproximately a year before Davis [the victim] was killed, Coe stole $2,400 worth of marijuana from Donte Simmons, an associate of Dennis Mingledolph.  The day of Davis's death, Mingledolph told Simmons he had just seen Coe in their vicinity; April Girtman drove Mingledolph, Simmons, and a man known as "Block" through the area and located Coe.  Before Mingledolph, Simmons, and Block exited the vehicle, Mingledolph handed Simmons a 9mm pistol; the three men then accosted Coe and searched him,

taking his cell phone and a pocketknife, and Mingledolph encouraged Simmons to shoot Coe. However, Coe was permitted to leave and ran away; the four others then drove to Luckey Street and Mingledolph exited the vehicle after Simmons returned his pistol; Girtman, Simmons, and Block then drove away.

Meanwhile, Coe encountered his friend Lewis Harmon driving his vehicle in the company of LaToya Jones; Coe got in Harmon's vehicle and said that he had been robbed and threatened. Harmon drove Coe and Jones to Luckey Street where Harmon intended to purchase marijuana. When Coe, Harmon, and Jones arrived at Luckey Street, Mingledolph exited the other vehicle, carrying the 9mm pistol Simmons had just returned to him. Harmon exited his vehicle and spoke with Mingledolph; he then went inside a house to purchase marijuana while Coe and Jones remained in the car. After some minutes, Coe exited the car to find out what was taking Harmon so long, after having taken Harmon's 10mm pistol from the console of the vehicle; he and Mingledolph exchanged gunfire, and Mingledolph retreated, with Coe pursuing him. Mingledolph escaped, and Coe returned to Harmon's vehicle, picking up a 9mm clip from Mingledolph's pistol; Coe later hid Harmon's pistol and the clip he had picked up at the scene of the crime in the home of a relative of Harmon's.

During the exchange of gunfire, Davis was seated in his pickup truck, parked between the combatants. Law enforcement officers who responded to the shooting found him dead of a single gunshot wound through the head; his truck had been struck by numerous bullets from both Mingledolph's 9mm pistol and the 10mm pistol Coe fired.

Id. at 825-26.

Petitioner filed a state habeas corpus petition *pro se* on August 30, 2013, in Tattnall County, and subsequently amended his state petition on October 22, 2014, and August 6, 2015. (Doc. nos. 11-10, 11-11, 11-12.) In his initial state petition, Petitioner raised eight claims. (Doc. no. 11-10.) In his first amended state petition, Petitioner raised sixteen claims, one of which had four subparts and another of which had five subparts, for a total of twenty-three claims. (Doc. no. 11-11.) In his second amended state petition, Petitioner raised ten grounds of ineffective assistance of appellate counsel. (Doc. no. 11-12.) The state habeas court conducted an evidentiary hearing on November 18, 2015, and Mr. Jones testified.

(Doc. no. 11-1, pp. 2-47.) At the hearing, the government set forth Petitioner's claims as the eight claims raised in his initial state petition and the ten grounds of ineffective assistance of counsel raised in the second amended state petition. (<u>Id.</u> at 6-10.) Petitioner agreed to the government's characterization and listing of his claims. (<u>Id.</u>) Nevertheless, Petitioner addressed some of the claims raised only in his first amended petition at the hearing, and the state habeas court ultimately ruled on those claims, as described below. Although Petitioner raised more than thirty claims in his state habeas petitions, the state claims relevant to Petitioner's current federal petition are as follows:

(1) Trial counsel provided ineffective assistance by:
    (a) failing to file a motion to sever, (doc. no. 11-10, p. 5);
    (b) failing to object to witnesses referring to Petitioner being on parole, (<u>id.</u> at 7);
    (c) failing to object to testimony by Donte Simmons at trial about Petitioner previously robbing him, (doc. no. 11-11, p. 2); and
    (d) showing her lack of effort by telling Petitioner during trial the jury "already had its mind ma[d]e up from the beginning," (<u>id.</u> at 7).

(2) Appellate counsel provided ineffective assistance by:
    (a) failing to argue trial counsel was ineffective on direct appeal, (doc. no. 11-12, pp. 1-3);
    (b) failing to challenge prosecutorial misconduct by interfering with defense tactics at trial, (<u>id.</u> at 2);
    (c) failing to communicate with Petitioner, (<u>id.</u> at 2-3);
    (d) failing to "present correct language" on direct appeal regarding the trial court's failure to grant a mistrial based on the testimony Petitioner was on parole, (<u>id.</u> at 4); and
    (e) failing to investigate, (doc. no. 11-11, p. 4).

(3) Investigators and the district attorney withheld evidence, namely a 911 call made concerning Petitioner being robbed, (doc. no. 11-10, p. 5);

(4) The evidence was insufficient to prove malice murder, (<u>id.</u> at 5, 7);

(5) The trial court violated Petitioner's due process rights by failing to dismiss a juror who was a childhood friend of the victim's wife, (<u>id.</u> at 7-8).

The state habeas court denied relief in a final order dated March 14, 2016, and filed March 16, 2016. (Doc. no. 11-13.) The Georgia Supreme Court denied Petitioner's request for a certificate of probable cause to appeal on April 17, 2017. (Doc. no. 11-14.)

Petitioner timely filed the above-captioned § 2254 petition *pro se*, raising the following grounds for relief:

(1) Trial counsel provided ineffective assistance by:
  (a) failing to file a motion to sever the trial;
  (b) failing to object to witnesses mentioning Petitioner was on parole;
  (c) failing to "object to witnesses' comments of past events without facts";
  (d) having poor ethics and lacking interest; and
  (e) failing to investigate.

(2) Appellate counsel provided ineffective assistance by:
  (a) failing to raise ineffective assistance of trial counsel claims as to;
    i.   the 911 call;
    ii.  the trial court's interference with defense counsel's cross-examination;
    iii. failure to raise a Fourth Amendment claim; and
    iv.  failure to object to the trial court's jury instruction omission;
  (b) failing to challenge the misconduct of the court;
  (c) failing to communicate with Petitioner;
  (d) failing to challenge the testimony of the government's witnesses about Petitioner being on parole; and
  (e) failing to investigate.

(3) The prosecution and state investigators violated Petitioner's due process rights by knowingly withholding a 911 recording that would have been favorable evidence for Petitioner at trial.

(4) Petitioner's guilt as to the malice murder charge was not proved beyond a reasonable doubt.

(5) The trial court violated Petitioner's due process rights by:
  (a) incorrectly charging the jury with malice murder;
  (b) failing to dismiss a juror, who had been a childhood friend of the victim's wife;

(c) failing to "honor the rule of severance";

(d) incorrectly charging the jury regarding transferred intent;

(e) failing to give a jury instruction regarding prior difficulties after agreeing to do so;

(f) failing to "honor sufficient errors for mistrial"; and

(g) failing to "honor mutual combat doctrine."

(See generally doc. nos. 1, 12.)  Petitioner raises Grounds One (e), Two (e), and Five (f) and

(g) for the first time in his brief in support of his petition.  (Doc. no. 12, pp. 3, 19.)

## II.    STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure

of federal habeas jurisdiction, designed to confirm that state courts are the principal forum

for asserting constitutional challenges to state convictions."  Harrington v. Richter, 562 U.S.

86, 103 (2011).  Accordingly, § 2254(d) creates a "difficult to meet and highly deferential

standard for evaluating state-court rulings, which demands that state-court decisions be given

the benefit of the doubt."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

In <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

<u>Id.</u> (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is wrong; "even clear error will not suffice." <u>White v. Woodall</u>, 572 U.S. 415, 419 (2014). Rather, the habeas petition must show the state court decision was "objectively unreasonable." <u>Wiggins v. Smith</u>, 539 U.S. 510, 520-21 (2003); <u>see also</u> <u>Woods v. Donald</u>, 575 U.S.-, 135 S. Ct. 1372, 1376 (2015) (petitioner must show state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). A showing the state court's determination was unreasonable is a substantially higher threshold than whether it was correct. <u>Reed v. Sec'y, Fla. Dep't of Corr.</u>, 767 F.3d 1252, 1260-61 (11th Cir. 2014); <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1325 (11th Cir. 2013). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen</u>, 563 U.S. at 181.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, § 2254(e)(1) requires the Court "to presume the correctness of state courts' factual findings" unless the habeas petitioner rebuts that presumption "with clear and convincing evidence." Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289 (11th Cir. 2016) (citing Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007)); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review."). "The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to § 2254(e)(1) . . . . Whatever that precise relationship may be, a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe v. Warden, 834 F.3d 1323, 1336 (11th Cir. 2016) (citing Wood v. Allen, 558 U.S. 290, 301 (2010)).

## III. DISCUSSION

### A. Pursuant to AEDPA, the Court Defers to the State Courts' Decisions Denying Petitioner's Claims in Ground Two (a)-(d) and Four

#### 1. Under Strickland v. Washington, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's

decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." Strickland, 466 U.S. at 691. Indeed, "strategic choices are 'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690 and Waters v. Thomas, 46 F.3d 1506, 1522 (11th Cir. 1995) (en banc)). To show an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters, 46 F.3d at 1512).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

The Strickland test also applies to claims of ineffective assistance of appellate counsel, see Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), with the additional consideration that a criminal defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983); see also Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (explaining appellate counsel not required to raise every non-frivolous issue). Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'" United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted). Moreover, it is up to appellate counsel to winnow out weaker arguments, even if they may have merit, and select the most promising issues for review. Jones, 463 U.S. at 751-52; Philmore, 575 F.3d

at 1264. Prejudice turns on whether "the neglected claim would have a reasonable probability of success on appeal." Philmore, 575 F.3d at 1265 (citation omitted).

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cave v. Sec'y for Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." Bell, 535 U.S. at 699. "In short, an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Barwick v. Sec'y, Fla. Dep't of Corr., 794 F.3d 1239, 1245 (11th Cir. 2015) (internal quotations and citations omitted).

Moreover, because "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." Richter, 562 U.S. at 105 (quotation marks and citations omitted); see also Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas"). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . . [F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt." Woods v. Etherton, 578 U.S.-, 136 S. Ct.

1149, 1151 (2016) (internal quotations and citations omitted).  To obtain federal habeas relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id.  Put another way, "[t]he Strickland standard is a general one, so the range of reasonable applications is substantial."  Richter, 562 U.S. at 105; see also Sexton v. Beaudreaux, 584 U.S.-, 138 S. Ct. 2555, 2560 (U.S. 2018) ("[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." (citation omitted)); Woods, 135 S. Ct. at 1376 ("AEDPA's standard is intentionally difficult to meet.").

### 2. The State Court's Application of Strickland to Petitioner's Ineffective Assistance Claims in Ground Two (a)-(d) Was Not Objectively Unreasonable

In Ground Two (a) to (d) of the federal petition, Petitioner argues appellate counsel rendered ineffective assistance by failing to: (a) raise ineffective assistance of trial counsel claims on appeal; (b) challenge the misconduct of the court; (c) communicate with Petitioner; and (d) challenge the testimony of the government's witnesses about Petitioner being on parole.  (Doc. nos. 1, p. 7; 12, pp. 6-10.)  The state habeas court rejected Petitioner's ineffective appellate assistance claims as to these grounds, concluding Petitioner had not shown Mr. Jones's performance was objectively unreasonable or that he was prejudiced by counsel's performance.  (See doc. no. 11-13.)  The Georgia Supreme Court denied the request for a CPC in a two sentence order:  "Upon consideration of the application for certificate of probable cause to appeal the denial of habeas corpus, it is ordered that it be hereby denied.  All the justices concur."  (Doc. no. 11-14.)  This Court "should 'look

through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" when determining, pursuant to 28 U.S.C. § 2254(d), whether the state court decision was reasonable. Wilson v. Sellers, 584 U.S.-, 138 S. Ct. 1188, 1192 (2018). The Court is also guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe, 834 F.3d at 1336.

Thus, the Court turns its attention to the state habeas court's reasoning, as it is the last state court to decide Petitioner's federal ineffective assistance of appellate counsel claims in a reasoned opinion. See Wilson, 138 S. Ct. at 1192. As discussed below, the state habeas court correctly identified and applied the two-part Strickland analysis to determine Petitioner did not show counsel's performance was objectively unreasonable or that he was prejudiced by counsel's performance. (See doc. no. 11-13.)

a.    Testimony at State Habeas Evidentiary Hearing

Mr. Jones was admitted to the Georgia Bar in 2005. (Doc. no. 1-1, p. 34.) After practicing in Athens, Georgia, for a number of years, Mr. Jones argued his first case before the Georgia Supreme Court in 2008 or 2009 and focused on appellate law until 2012, when he accepted a position as an administrative hearing officer for the Georgia Department of Labor. (Id. at 35.) During his representation of Petitioner, Mr. Jones devoted seventy-five to eighty-five percent of his practice to criminal work, and Petitioner's case was one of fifteen

felony appeals assigned to Mr. Jones by the Georgia Public Defender Standards Council. (Id.)

In preparing Petitioner's case, Mr. Jones requested a transcript of the trial from the court reporter, obtained copies of the record from trial counsel, and interviewed trial counsel to determine whether she observed any potential issues for appeal. (Id. at 37.) Although Mr. Jones did not meet with Petitioner in person until the hearing on Petitioner's motion for a new trial, Mr. Jones informed Petitioner by letter he had been appointed as Petitioner's counsel and asked Petitioner to send him anything he observed during trial for the purpose of appeal. (Id. at 38.) Mr. Jones received such a letter from Petitioner and acknowledges Petitioner brought up the issue regarding the 911 recording in his initial letter. (Id. at 41.) However, Mr. Jones conceded he did not respond to Petitioner's letters requesting status updates. (Id. at 39.)

After speaking with trial counsel, Mr. Jones determined there was no basis for ineffective assistance of trial counsel claims. (Id.) Mr. Jones also determined, after reviewing the trial transcript, there were no viable issues regarding the trial court's jury instructions, any Fourth Amendment claims, or the trial court curtailing trial counsel's cross-examination. (Id. at 38-39.) Mr. Jones only raised the issues he believed were the strongest to pursue on appeal. (Id. at 40.)

### b. Decision Not to Raise Ineffective Assistance of Trial Counsel Claims on Direct Appeal

In Ground Two (a), Petitioner alleges Mr. Jones rendered ineffective assistance by failing to raise ineffective assistance of trial counsel claims on direct appeal. However,

Petitioner does not specify in his federal petition what ineffective assistance of trial counsel claims he believes Mr. Jones should have brought on direct appeal. Instead, he merely states Mr. Jones "failed to file for the ineffective assistance of trial counsel after numerous letters from Petitioner about the before and aforementioned issues." (Doc. no. 12, p. 6.) However, in his state habeas petitions, Petitioner argued Mr. Jones should have raised trial counsel's failure to: (i) object to the State withholding evidence of a 911 call made after Petitioner was robbed; (ii) object to the trial court interfering with trial counsel's cross-examination; (iii) raise the issue of an illegal search and seizure pretrial; and (iv) object to the trial court's failure to give a jury instruction regarding prior difficulties between the parties. (Doc. no. 11-12.) If Petitioner were attempting to raise claims other than those previously raised before the state habeas court, those claims would be procedurally barred as new claims. Smith v. Jones, 256 F.3d 1135, 1138-39 (11th Cir. 2001). Therefore, the Court construes Petitioner's Ground Two (a) claims as raising only those claims raised during the state habeas proceedings.

### i.      The 911 Call

The state habeas court did not address and rule on Petitioner's claim appellate counsel was ineffective by failing to raise an ineffective assistance of trial counsel claim based on not objecting to the 911 call being withheld in its final order. (See doc. no. 11-13.) Where a state court denies relief to a petitioner and does not address an individual claim that is later raised in a federal habeas proceeding, there is a rebuttable presumption the federal claim was adjudicated on the merits by the state court. Johnson v. Williams, 568 U.S. 289, 292-3. (2013). "To determine whether the presumption has been rebutted, we look to the state

court's decision and the record in the case to determine whether 'the evidence leads very clearly to the conclusion that [the] federal claim was inadvertently overlooked in the state court.'" Childers v. Floyd, 736 F.3d 1331, 1334 (11th Cir. 2013) (quoting Johnson, 568 U.S. at 303).

Furthermore, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden . . . must be met by showing there was no reasonable basis for the state court to deny relief." Harrison v. Richter, 562 U.S. 86, 98 (2011). In this circumstance, "a habeas court must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Court." Id. at 102.

There is nothing in either the state court's decision or the record to rebut the presumption the state court denied Petitioner's claim on the merits. Petitioner raised this issue as the first enumeration of error in his second amended state habeas petition. (Doc. no. 11-12, p. 1.) The state habeas court explicitly acknowledged Petitioner's second amended petition at the beginning of its order and discussed Petitioner's standalone claim regarding the recording. (Doc. no. 11-13, pp. 1-2.) Thus, the court must determine what arguments or theories could have supported the state court's decision and ask whether fairminded jurists could disagree about whether they are inconsistent with Supreme Court precedent. Harrison, 562 U.S. at 102.

In his state petitions, Petitioner claimed two investigators played him a recording of the 911 call made after Petitioner was robbed. (Doc. no. 11-10, p. 5.) Petitioner stated the

caller said, "They robbing [sic] Willie Coe on McCauley St., send the police." (Id.) In his initial state petition, Petitioner stated the call occurred less than three to five minutes before the shooting. (Id.) In his first amended habeas petition, Petitioner said the call occurred approximately two to four minutes before the shooting and showed Petitioner was in danger, distressed, and feared for his life at the time of the shooting. (Doc. no. 11-11, pp. 1-2.) Petitioner states investigators played the recording before interviewing him in order to get him to talk freely without a lawyer. (Id.)

At the state habeas hearing, Petitioner stated the 911 call took place less than a minute before the shooting. (Doc. no. 11-1, p. 10.) The investigators asked Petitioner to identify the caller, but he could not. (Id.) Petitioner claims the evidence was withheld at trial. (Id.) Petitioner stated his trial counsel asked Investigator Kelly about the 911 call and the trial court "overruled on the evidence of the 911 call." (Id. at 10-11.) However, the trial transcript indicates trial counsel only asked Inv. Kelley about the robbery, not the 911 call. (Doc. no. 11-5, pp. 148-49.) Petitioner stated the 911 call would have shown his state of mind and supported his theory of self-defense. (Doc. no. 11-1, p. 11.) Petitioner stated he wants to know why the 911 call was not presented. (Id. at 12.)

Petitioner is inconsistent about how much time passed between the 911 call and the shooting. (See doc. nos. 11-10, p. 5; 11-11, p. 1; 11-1, p. 10.) However, it is clear he is referring to the same 911 call because: (1) the evidence presented at trial showed only one robbery occurred on the day of the shooting on McCauley Street before Petitioner rode in the car to Luckey Street where the gunfight occurred, see Coe, 748 S.E.2d at 826-27; (2) Petitioner alleges only one robbery occurred that day on McCauley Street; and (3) Petitioner

alleges the 911 caller reported a robbery on McCauley Street, (doc. nos. 11-1, pp. 10-12; 11-10, p. 5; 11-11, pp. 1, 3; 12, pp. 4, 11-13). Furthermore, Petitioner does not allege another 911 call took place. In fact, Petitioner consistently states the 911 call at issue was the 911 call the investigators played to him during the interrogation. (See doc. no. 11-10, p. 5; 11-11, p. 1; 11-1, p. 10; 12, pp. 6, 10.)

As to the timing of the call, the evidence presented at trial suggests, despite Petitioner's shortest estimate, more than a minute passed between the 911 call and the shooting. While April Girtman estimated it took "not even a minute" to drive Messrs. Mingledolph and Simmons from McCauley Street, where the robbery occurred, to Luckey Street, where they dropped off Mr. Mingledolph, she and Mr. Simmons testified they pulled up at their home a few blocks away when they heard the shooting begin. (Doc. no. 11-4, pp. 178, 193, 197-98.)

Lewis Harmon testified he saw Petitioner after the robbery running toward a person on a bicycle before noticing the vehicle Mr. Harmon and LaToya Jones were in and running toward the vehicle. (Id. at 213.) Petitioner explained what happened during the robbery while they rode in a vehicle toward Luckey Street. (Id.) After they arrived at Luckey Street, Petitioner continued to explain what happened, and the vehicle with Mr. Mingledolph pulled up. (Id. at 214.) Messrs. Mingledolph and Harmon got out of their respective vehicles, and Mr. Mingledolph approached Mr. Harmon. (Id. at 217.) They engaged in conversation and discussed the possible presence of law enforcement nearby. (Id. at 217-18.) Mr. Harmon also briefly spoke with Mr. Davis, the victim, who had just arrived in his own vehicle. (Id. at 220.) Mr. Harmon then walked around a nearby house to go buy marijuana. (Id. at 219.)

While coming back around the house, Mr. Harmon heard the gunshots begin. (Id. at 220.) Ms. Jones testified Mr. Harmon was "taking a long time" buying marijuana before Petitioner exited the vehicle with the pistol. (Doc. no. 11-5, p. 16.) Thus, the witnesses' accounts of the timeline indicate more than only a minute passed between the end of the robbery and when the gunfire began.

At the habeas hearing, Mr. Jones testified Petitioner made him aware of the 911 call in his initial letter and, after speaking with trial counsel and reviewing the trial transcript, Mr. Jones determined there were no viable ineffective assistance of trial counsel claims to raise on appeal. (Id. at 38, 41.) Mr. Jones also did not raise the standalone issue of whether the State improperly withheld the recording of the 911 call on direct appeal. See Coe, 748 S.E.2d at 826-28. As noted above, it is up to appellate counsel to winnow out weaker arguments, even if they may have merit, and select the most promising issues for review. Jones, 463 U.S. at 751-52; Philmore, 575 F.3d at 1264.

Nondisclosure by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution. Brady v. Maryland, 373 U.S. 83, 87 (1963). There are four elements Petitioner must show to establish a Brady violation:

> (1) the government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different.

United States v. Stein, 846 F.3d 1135, 1145-46 (11th Cir. 2017) (quoting United States v. Vallejo, 297 F.3d 1154, 1164 (11th Cir. 2002)).

During the state habeas proceedings, Petitioner argued the government was in possession of and "withheld" the 911 call. (Doc. no. 11-10, p. 5; 11-1, p. 10.) He also claimed the evidence was favorable because it was probative of his state of mind, which supported his self-defense theory. (Doc. no. 11-1, p. 11.) However, Petitioner failed to claim he could not have obtained the evidence with any reasonable diligence and does not provide any factual detail concerning any attempt to obtain a recording of the call from the prosecutor or the 911 call center. In fact, in his brief in support of his federal petition, Petitioner indicates he informed his trial counsel about the recording, and she failed to secure it. (Doc. no. 12, p. 6.)

Nevertheless, even assuming Petitioner could establish the first three elements of the standard, Petitioner does not state a valid <u>Brady</u> violation because there is not a reasonable probability the outcome of trial would have been different if the evidence had been disclosed. Mr. Simmons admitted at trial he robbed Petitioner with a gun before the shootout and testified about the robbery in detail. (Doc. no. 11-4, pp. 173-76, 181-82, 185-86.) Ms. Girtman also testified she was present when Messrs. Simmons and Mingledolph robbed Petitioner and described the robbery. (<u>Id.</u> at 190-93, 201-02, 205-06.) Ms. Girtman also testified they got back in the car after a girl called 911. (<u>Id.</u> at 191.) In short, the jury heard detailed testimony about the armed robbery and were aware a 911 call had been made. Petitioner only alleges the 911 caller reported Petitioner was being robbed on McCauley Street. (Doc. nos. 11-10, p. 5; 11-11, p. 1; 11-1, p. 10.) Thus, the 911 recording would not have provided any additional information about the robbery not presented at trial. In light of the evidence Petitioner left the scene of the robbery, retreated to the relative safety of Mr.

Harmon's vehicle, later obtained a pistol, engaged in a gunfight with Mr. Mingledolph, and chased him down the street, there is not a reasonable probability the outcome of the trial would have been different if the evidence had been disclosed. Accordingly, Petitioner could not have established the government committed a <u>Brady</u> violation, and, thus, trial counsel was not ineffective for failing to obtain the recording, and Mr. Jones did not render deficient representation by failing to raise this issue on appeal.

In addition to determining trial counsel was not deficient for not objecting to the alleged withholding of the 911 call, the state court could have reasonably determined Petitioner did not suffer prejudice under <u>Strickland</u> because, as described above, the 911 call would have been cumulative evidence if introduced at trial. "[A] petitioner cannot satisfy the prejudice prong of the *Strickland* test with evidence that is merely cumulative of evidence already presented at trial. Generally, evidence presented in postconviction proceedings is 'cumulative' . . . when it tells a more detailed version of the same story told at trial or provides more or better examples or amplifies the themes presented to the jury." <u>Ledford v. Warden, Ga. Diagnostic and Classification Prison</u>, 818 F.3d 600, 649 (11th Cir. 2016) (internal citations and quotations omitted).

The state court could have reasonably determined appellate counsel was not deficient for failing to appeal this issue because he reasonably determined trial counsel was not deficient and, moreover, trial counsel's decision did not prejudice Petitioner at trial. Accordingly, this claim provides no basis for federal habeas corpus relief for Petitioner.

### ii. Trial Court's Interference with Defendant's Cross-Examination

Petitioner argues appellate counsel rendered ineffective assistance of counsel by failing to argue trial counsel was ineffective for failing to object to the trial court interfering with the "tactics of the defense" by telling trial counsel to "hurry up" after co-defendant's counsel objected to trial counsel's questions as asked and answered. (Doc. no. 11-12, p. 2.) Although Petitioner states he challenges "prosecutorial misconduct," it is clear he actually challenges the conduct of the trial court, as the prosecutor was not involved in the relevant exchange. (See doc. no. 11-5, pp. 100-01.)

Petitioner argues Pete Theodocian, co-defendant's trial counsel, interrupted trial counsel Ms. Neumann's cross-examination of LaToya Jones by objecting he had just asked the witness the same questions, and the court told Ms. Neumann to hurry up. (Doc. no. 11-11, p. 3.) Despite Petitioner's argument to the contrary, the trial court never interrupted trial council's cross-examination of Ms. Jones or any other witness. Indeed, Mr. Theodocian only objected to Ms. Neumann's questions on cross-examination as asked and answered during the testimony of Sergeant James Gordon, and the trial court overruled the objection, stating Ms. Neumann had "a right to a thorough and sifting cross examination." (Doc. no. 11-5, pp. 100-01.) Thus, there was no error by the trial court. The state habeas court correctly determined trial counsel was not deficient and did not prejudice Petitioner's defense, so Petitioner failed to establish ineffective assistance of appellate counsel. (Doc. no. 11-13, p. 3.) "Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'" Nyhuis, 211 F.3d at 1344.

Therefore, the state court's decision to reject this claim was not an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts in light of the evidence presented. Mr. Jones's performance was neither deficient nor prejudicial with respect to the decision not to raise a challenge on this meritless issue, and this claim provides no basis for federal habeas corpus relief.

### iii.      Failure to Raise Fourth Amendment Claim

Petitioner argued Mr. Jones rendered ineffective assistance of counsel by failing to argue trial counsel was ineffective for failing to raise a pretrial Fourth Amendment claim based on investigators searching his sister's residence without a search warrant. (Doc. no. 11-12, p. 3.) Petitioner states his sister initially refused to allow the investigators to search her kitchen cupboard, but she acquiesced after the investigators said "they would get Department of Family and Children Services involved and make her lose her section 8 voucher." (Doc. no. 11-11, p. 5.) Mr. Jones testified at the habeas hearing he reviewed the case, including the transcript, and determined there were no viable issues to raise regarding any potential Fourth Amendment claim because Petitioner's property was not the subject of the search. (Doc. no. 11-1, p. 39.) Accordingly, the state habeas court found there was no improper search and seizure and denied Petitioner's ineffective assistance of appellate counsel claim. (Doc. no. 11-13, p. 4.)

Indeed, Petitioner lacked standing to contest the search of his sister's residence, as there is no indication he had "'an unrestricted right of occupancy or custody and control of the premises' that would create a legitimate expectation of privacy in the residence." <u>United States v. Lisbon</u>, 835 F. Supp. 2d 1329, 1341-42 (N.D. Ga. 2011) (citing <u>United States v.</u>

Cossio, 336 F. App'x 909, 912 (11th Cir. 2009) (quoting United States v. Baron-Mantilla, 743 F.2d 868, 870 (11th Cir. 1984))).  In his first amended petition, Petitioner only alleged his sister initially refused to allow the investigators to search her kitchen cupboard, but she acquiesced after the investigators indicated they would report her to Department of Family and Children Services and make her lose her section 8 voucher.  (Doc. no. 11-11, p. 5.)  At the state habeas hearing, Petitioner further explained he hid the magazine clip from Mr. Mingledolph's 9mm pistol at his sister's residence and later told investigators he hid the clip at her house.  (Doc. no. 11-1, p. 24.)  However, Petitioner alleged no facts to indicate he had a legitimate expectation of privacy in his sister's residence based on his residing there, being an overnight guest, having exclusive use and control over any part of the residence, including the kitchen cabinets, or even unfettered access to the residence.  Petitioner's allegations do not establish he could have reasonably asserted a legitimate expectation of privacy in his sister's residence, such to confer standing on him to contest the legitimacy of the search. Thus, Mr. Jones was correct to determine there was no viable ineffective assistance of trial counsel claim based on a Fourth Amendment issue.

Additionally, Mr. Jones could have reasonably determined Petitioner did not suffer prejudice because the evidence related to the clip introduced at trial was minimal and would be outweighed by overwhelming evidence of Petitioner's guilt presented at trial.  United States v. Hatcher, 541 F. App'x 951, 954-55 (11th Cir. 2013) (holding petitioner's ineffective assistance claims fail due to lack of prejudice in light of overwhelming evidence of guilt presented a trial).  Only three witnesses testified regarding the clip.  Mr. Harmon testified he saw Petitioner pick up the clip, identified the clip, and, testified, at odds with Petitioner's

allegations, he hid the clip at his grandmother's house. (Doc. no. 11-4, pp. 222, 227-233.) Amanda Lokar, the ballistics expert for the state, did not examine the clip prior to trial but testified the 9mm bullets she tested would have fit in the clip. (Doc. no. 11-5, p. 112.) Finally, Investigator James Kelly identified a photo of a recovered handgun magazine, but it is not clear whether the magazine was for the 9mm or 10mm handgun. (Id. at 247.) In light of the testimony indicating Petitioner engaged Mr. Mingledolph in a shootout, chased him as he attempted to retreat, and continued to fire his pistol, the testimony about the seized 10mm clip likely had very little effect on the outcome of the trial. Thus, because the testimony regarding the clip was so minimal, there is no reasonable probability the result of the proceeding would have been different even if trial counsel had challenged the search of Petitioner's sister's house and the clip had been suppressed. Strickland, 466 U.S. at 694

As stated above, "appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'" Nyhuis, 211 F.3d at 1344. Accordingly, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented. Mr. Jones's performance was neither deficient nor prejudicial with respect to the decision not to raise a Fourth Amendment challenge, and this claim does not provide a basis for federal habeas corpus relief.

### iv. Failure to Object to Trial Court's Jury Instruction Omission

Petitioner also argued Mr. Jones should have challenged trial counsel's failure to object to the trial court omitting the jury instruction regarding prior difficulties. (Doc. no.

11-12, p. 3.)  The state habeas court did not specifically address and rule on that claim in its final order. (Doc. no. 11-13, p. 5.)  However, there is nothing in the state court's decision or the record to rebut the presumption the state court denied Petitioner's claim on the merits. Johnson, 568 U.S. at 292-3; Harrison, 562 U.S. at 102.  In fact, the state habeas court acknowledged Petitioner's claim, as raised in his second amended petition, in its final order and clarified the issue was the failure to object to the trial court's failure to give the jury instruction regarding prior difficulties.  (Doc. no. 11-13, p. 5.)

The Court must determine what arguments or theories could have supported the state court's decision and ask whether fairminded jurists could disagree they are inconsistent with Supreme Court precedent.  Johnson, 568 U.S. at 292-3; Harrison, 562 U.S. at 102.  The state court could have reasonably determined appellate counsel was not ineffective for not raising the issue because trial counsel did, in fact, object to the trial court's failure to give the jury instruction, and the trial court overruled the objection.  (Doc. no. 11-5, pp. 205-07.)  Thus, Petitioner's claim is completely unsupported.  "Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'"  Nyhuis, 211 F.3d at 1344.

Therefore, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.

### c. Decision Not to Challenge Jury Instructions on Impeachment of a Witness and Credibility of Witnesses

In Ground Two (b), Petitioner alleges Mr. Jones should have challenged the trial court's "misconduct." (Doc. no. 1, p. 7.)  While Petitioner does not specify the alleged misconduct, he raised the claim during his state habeas proceedings that Mr. Jones was ineffective for failing to challenge the trial court interrupting trial counsel's cross-examination of Latoya Jones. (Doc. no. 11-11, p. 3; doc. no. 11-12, p. 2.)

As described in § III.A.2.b.ii, <u>supra</u>, the trial court did not, in fact, interrupt trial counsel's cross examinations.  Accordingly, the state habeas court found, as does this Court, Mr. Jones did not act unreasonably in choosing not to challenge the trial court on this basis. As the state habeas court also found, Petitioner has not established the requisite prejudice because the trial court did not curtail Ms. Neumann's cross-examination of any witness.  In sum, the state court's decision to reject this claim was not an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of the facts in light of the evidence presented.

### d. Failure to Communicate with Petitioner

In Ground Two (c), Petitioner alleges Mr. Jones rendered ineffective assistance of counsel by failing to communicate with Petitioner during the pendency of the motion for new trial and direct appeal.  In his first amended state habeas petition and brief in support of his federal petition, Petitioner describes his efforts to communicate with Mr. Jones during his representation of Petitioner. (Doc. nos. 11-11, pp. 4-5; doc. no. 12, pp. 4-7.)  During the state habeas hearing, Mr. Jones admitted he did not meet Petitioner in person until the

hearing on the motion for a new trial, only communicated with Petitioner by letter before then, and failed to respond to Petitioner's letters requesting status updates. (Doc. no. 11-1, pp. 37-38.) Nevertheless, Mr. Jones requested Petitioner send a letter with a list of errors Petitioner observed at trial and indicated at the habeas hearing he received and considered such a letter from Petitioner. (Id. at 38, 41.) Additionally, Mr. Jones obtained copies of the trial transcript and spoke with Ms. Neumann before deciding which issues to raise on appeal. (Id. at 39-40.) Mr. Jones indicated he only raised the strongest issues on appeal. (Id. at 40.)

In light of Mr. Jones's testimony and the fact Mr. Jones communicated with Petitioner about the issues Petitioner observed at trial, the state habeas court determined, while "[c]ounsel should have communicated more with Petitioner," Mr. Jones "did communicate enough to adequately represent Petitioner on appeal." (Doc. no. 11-13, p. 4.) The Court cannot say the state court's determination Mr. Jones did not render ineffective assistance of counsel was an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.

### e. Failure to Challenge the Testimony of Witnesses Regarding Petitioner Being on Parole

In Ground Two (d) of his federal petition, Petitioner alleges Mr. Jones rendered ineffective assistance of counsel by failing to challenge the testimony of witnesses regarding Petitioner being on parole. (Doc. no. 1, p. 7; 12, p. 10.) As the state habeas court noted, Mr. Jones argued the issue regarding the testimony on appeal. Coe, 748 S.E.2d at 827-28; (doc. no. 11-13, pp. 6-7.) However, in his second amended state habeas petition, Petitioner also argued Mr. Jones "failed to present correct language" concerning the issue on direct appeal.

(Doc. no. 11-12, p. 4.) Petitioner's conclusory claim does not indicate how Mr. Jones's presentation of the issue on direct appeal was deficient or why the Georgia Supreme Court would have decided the issue in his favor if the issue had been presented in the manner Petitioner would have preferred. The state habeas court found Mr. Jones properly raised the issue on appeal and determined Petitioner's claim was without merit. (Id.)

Upon review of Petitioner's brief on direct appeal, the Court cannot determine Mr. Jones's presentation of the issue was deficient in any manner. Mr. Jones cited relevant portions of the trial transcript and Georgia case law in support of his argument. (Doc. no. 11-8, pp. 132-35.) Furthermore, although the Supreme Court of Georgia initially decided trial counsel waived the issue for the purpose of appeal by not objecting at trial, it nevertheless considered the merits and decided, in the alternative, the witness testimony regarding Petitioner being on parole did not warrant granting a mistrial. Coe, 748 S.E.2d at 827-28. The Supreme Court of Georgia's determination Petitioner's argument was meritless does not mean Mr. Jones improperly raised the issue.

In sum, the state court's decision to reject this claim was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented. Mr. Jones's performance was neither deficient nor prejudicial with respect to raising the issue on direct appeal, and this claim provides no basis for federal habeas corpus relief.

3. **This Court Defers to the Decision of the Georgia Supreme Court that the Evidence Adduced at Trial Was Sufficient to Authorize a Rational Trier of Fact to Find Petitioner Guilty of Malice Murder**

In Ground Four of the federal petition, Petitioner argues the evidence at trial was

insufficient to support his conviction for malice murder and did not establish beyond a reasonable doubt he committed malice murder. (Doc. no. 1, p. 10; doc. no. 12, pp. 11-16.) When Petitioner raised this sufficiency of the evidence argument on direct appeal, the Georgia Supreme Court summarized the evidence – as set forth in detail in Part I, supra – and found the evidence sufficient to authorize a rational trier of fact to find Petitioner guilty beyond a reasonable doubt under Jackson v. Virginia, 443 U.S. 307 (1979). See Coe, 748 S.E.2d at 826-27. The Georgia Supreme Court cited the Georgia statute providing "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." Id. (citing O.C.G.A. § 16-2-20). The court also stated

> [f]rom the circumstances proven in this case, a rational jury could have inferred that [Coe] shared a common criminal intent with [Mingledolph] to engage in a gunfight in the presence of . . . innocent bystanders . . . [a]nd even though [Davis] evidently was not an intended victim of the gunfight, the evidence was sufficient for a rational trier of fact to find that [Coe] was a party to the crime of [malice murder] under the doctrine of transferred intent.

Id. (citing Jones v. State, 740 S.E.2d 590, 594 (Ga. 2013)).

In Jackson, the Supreme Court held that the Fourteenth Amendment Due Process Clause mandates no person shall be convicted unless the evidence is sufficient to convince the trier of fact beyond a reasonable doubt of the existence of every element of the offense. 443 U.S. at 316. Thus, the relevant question on review of a sufficiency of the evidence claim is whether "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. The Court is also guided by AEDPA's mandate that factual determinations made

by a state court are presumptively correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe, 834 F.3d at 1336.

Petitioner fails to show the state court's conclusion was an unreasonable application of Jackson. On direct appeal, the appellate court has a duty to view the evidence in the light most favorable to the verdict. Jackson, 443 U.S. at 319; Barela v. State, 517 S.E.2d 321, 323 (Ga. 1999) ("[T]he [appellate] Court does not weigh or evaluate the evidence for itself, nor does it resolve conflicts concerning the evidence. Rather it examines the evidence in its entirety in a light most favorable to the verdict to determine whether any rational trier of fact could have found the accused guilty beyond a reasonable doubt.") Moreover, as explained above, in these federal proceedings, factual determinations made by the state court are presumptively correct and must be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Petitioner argues the testimony and evidence show he was the "victim of a reveng[e] armed robbery" and establish Mr. Mingledolph was the aggressor and Petitioner was only acting in self-defense. (Doc. no. 12, pp. 12-16.) Petitioner also argues murder may be justifiable under the mutual combat doctrine. (Id. at 15.)

As an initial matter, Georgia's mutual combat doctrine does not apply where a defendant asserts he acted in self-defense during a fight. See Russell v. State, 813 S.E.2d 380, 384 (Ga. 2018) (holding mutual combat instruction not warranted where defendant asserts he acted in self-defense). Thus, the mutual combat doctrine does not apply because

Petitioner has consistently and vehemently argued he is innocent of malice murder, Mr. Mingledolph was the aggressor, and he was merely acting in self-defense.

Furthermore, the record provides ample support for the jury's verdict and for the state court's determination the evidence was sufficient for a rational trier of fact to find Petitioner guilty beyond a reasonable doubt. At trial, the State produced evidence showing Petitioner, after leaving the scene of the armed robbery and hiding in Mr. Harmon and Ms. Jones's vehicle, observed Mr. Mingledolph arrive and then obtained a gun from the inside of the vehicle, exited the vehicle, engaged in a gunfight with Mr. Mingledolph, and chased Mr. Mingledolph down the street as he attempted to retreat. Coe, 748 S.E.2d at 825-26; (doc. no. 11-4, pp. 113-22; 11-5, pp. 8-34). At bottom, Petitioner merely complains the jury incorrectly evaluated the evidence and determined Petitioner was not acting in self-defense. However, it was the province of the jury to weigh the evidence, and a rational trier of fact could have found Petitioner was not acting in self-defense and was guilty beyond a reasonable doubt.

Thus, the Georgia Supreme Court did not unreasonably apply Jackson. Petitioner's argument is woefully inadequate to establish the state court unreasonably applied Jackson or based its decision on an unreasonable determination of the facts in light of the evidence presented. Indeed, Petitioner has not presented any evidence—much less clear and convincing evidence—to rebut the presumptive correctness of the Georgia Supreme Court's factual determinations. The evidence at trial was sufficient for a jury to find guilt beyond a reasonable doubt. Accordingly, Petitioner is not entitled to federal habeas relief in connection with his claim in Ground Four.

**B.** **Petitioner's Procedural Default**

    **1.** **A Federal Habeas Petitioner Defaults a Claim by Failing to Properly Exhaust State Remedies**

AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss unexhausted habeas claims the petitioner did not raise in state court but could have raised by any available procedure. 28 U.S.C. § 2254(b)(1)(A) & (c). A state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the federal claims. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999).

"A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." <u>Henderson v. Campbell</u>, 353 F.3d 880, 891 (11th Cir. 2003) (quoting <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001)). The exhaustion requirement applies with equal force to all constitutional claims. <u>See</u> <u>Lucas v. Sec'y, Dep't of Corr.</u>, 682 F.3d 1342, 1351-54 (11th Cir. 2012); <u>Footman v. Singletary</u>, 978 F.2d 1207, 1211 (11th Cir. 1992). "Ultimately, 'to exhaust state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'" <u>Preston v. Sec'y, Fla. Dep't of Corr.</u>, 785 F.3d 449, 457 (11th Cir. 2015) (citation omitted). Furthermore, a petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available. <u>McNair v. Campbell</u>, 416 F.3d 1291, 1305 (11th Cir. 2005).

A federal habeas petitioner can run afoul of procedural default rules in one of two ways, depending on whether the claim is an old one the petitioner already attempted to assert unsuccessfully in state court, or a new one the petitioner never attempted to raise in state court. First, a federal habeas petitioner cannot revive an old claim that a state court previously denied on independent and adequate procedural grounds. "As a general rule, a federal habeas court may not review state court decisions on federal claims that rest on state law grounds, including procedural default grounds, that are 'independent and adequate' to support the judgment." Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1335 (11th Cir. 2012).

A state court decision rests on "independent and adequate" state procedural grounds when it satisfies the following three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly say that it is relying on state procedural rules to resolve the federal claim without reaching the merits of the claim. Second, the state court decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law. Finally, the state procedural rule must be adequate; *i.e.,* it may not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for purposes of the procedural default doctrine. In other words, a state procedural rule cannot bar federal habeas review of a claim unless the rule is "firmly established and regularly followed."

Id. at 1336 (internal quotations and citations omitted). Additionally, the Supreme Court has made clear that "a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default." Walker v. Martin, 562 U.S. 307, 311 (2011).

Second, a federal habeas petitioner runs afoul of procedural default rules when he

attempts to bring a new claim in his federal petition that would be procedurally barred if he attempted to raise it in state court. In such instances, unless the petitioner either establishes the cause and prejudice or the fundamental miscarriage of justice exception, the failure to bring the claim properly in state court has "matured into a procedural default." Smith, 256 F.3d at 1138-39. Thus, where a state procedural bar is apparent, a court "can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Smith v. Sec'y, Dep't of Corr., 572 F.3d 1327, 1342 (11th Cir. 2009) (citing Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998)); Bailey v. Nagle, 172 F.3d 1299, 1303 (11th Cir. 1999). To determine whether a claim is procedurally barred in this way, the federal court must ask whether "it is clear from state law that any future attempts at exhaustion would be futile." See Bailey, 172 F.3d at 1305.

Simply put, if a claim has not been "fairly presented to the state courts, it is procedurally defaulted." Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006). To that end, absent a showing of either cause to excuse the default and actual prejudice or a fundamental miscarriage of justice, O.C.G.A. § 9-14-48(d) precludes state habeas review of any issue not preserved for collateral attack in a state court by timely objecting and raising the issue on appeal. See Devier v. Zant, 3 F.3d 1445, 1454-55 (11th Cir. 1993) (citing O.C.G.A. § 9-14-48(d) and upholding a finding of procedural default on numerous claims); see also Waldrip v. Head, 620 S.E.2d 829, 835 (Ga. 2005) ("Claims not raised on direct appeal are barred by procedural default, and in order to surmount the bar to a defaulted claim, one must meet the 'cause and prejudice' test."); Black v. Hardin, 336 S.E.2d 754, 755 (Ga. 1985) ("The rule now may be stated as follows: a failure to make timely objection to

*any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus."). In addition, Georgia law prohibits the assertion of state habeas claims in any successive petition that could have been asserted in the original state habeas petition. O.C.G.A. § 9-14-51; <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1327 (11th Cir. 1998) ("The Georgia statute restricting state habeas review of claims not presented in earlier state habeas petitions can and should be enforced in federal habeas proceedings against claims never presented in state court . . . .").

### 2. Petitioner's Claims in Grounds One (c), (d), and (e), Two (e), Three, and Five Are Procedurally Defaulted

In Ground One (c) Petitioner argues trial counsel provided ineffective assistance of counsel by failing to "object to witnesses comments of past events without facts." In Ground One (d) Petitioner argues trial counsel rendered ineffective assistance by having poor ethics and lacking interest. In Ground One (e), Petitioner argues trial counsel was ineffective for failing to investigate a 911 call made after Petitioner was robbed by Messrs. Simmons and Mingledolph. In Ground Three, Petitioner argues the prosecution and state investigators violated Petitioner's due process rights by knowingly withholding a 911 recording that would have been favorable for Petitioner at trial. In Ground Five, Petitioner argues the trial court violated Petitioner's due process rights by: (1) incorrectly charging the jury with malice murder; (2) failing to dismiss a juror who had been a childhood friend of the victim's wife; (3) failing to "honor the rule of severance"; (4) incorrectly charging the jury regarding transferred intent; (5) failing to give a jury instruction regarding prior difficulties after agreeing to do so; (6) failing to "honor sufficient errors for mistrial"; and (7) failing to

"honor mutual combat doctrine."

The state habeas court found that Grounds One (c) and Three were procedurally defaulted under O.C.G.A § 9-14-48(d) because Petitioner did not timely raise these claims at trial and then assert them as error on direct appeal and did not satisfy the requisite cause and prejudice standard to excuse the default. (Doc. no. 11-13, pp. 1-3.) As to Ground One (c), Petitioner argued in his first amended state habeas petition trial counsel was ineffective by failing to object when Mr. Simmons testified Petitioner robbed him the year before, when there were no documents or witnesses to support his testimony. (Doc. no. 11-11, pp. 4-5.) Petitioner did not raise this claim on appeal. Coe, 748 S.E.2d at 826-68. The state habeas court held the claim was procedurally barred because it was not raised on direct appeal. (Doc. no. 11-13, p. 3.) As to Ground Three, Petitioner argued in his initial state habeas corpus petition the state prosecutor and investigators withheld evidence of a prior 911 call describing Petitioner being robbed just before the shooting. (Doc. no. 11-10, p. 5.) Petitioner also did not raise this claim on appeal. Coe, 748 S.E.2d at 826-68. The state habeas court held the claim was procedurally barred pursuant to O.C.G.A. § 9-14-48(d) and Petitioner had not shown cause or prejudice for failing to raise the claim on appeal. (Doc. no. 11-13, pp. 1-2.) Accordingly, these claims are procedurally barred under O.C.G.A. § 9-14-48(d).

Petitioner's Ground One (d) and (e), Ground Two (e), and Ground Five claims are new claims, which were raised neither on direct appeal nor during Petitioner's state habeas corpus proceedings. As to Ground One (d), Petitioner did not argue on direct appeal or during his state habeas proceedings trial counsel was ineffective for having poor ethics and

lacking interest. In his first amended state habeas petition, Petitioner argued trial counsel was ineffective and incompetent because she told Petitioner the jury made its mind up from the beginning. (Doc. no. 11-11, p. 7.) However, it is not at all clear Petitioner is attempting to reassert that claim in his federal petition, as he does not provide any factual detail regarding this claim. (See doc. nos. 1, 12.) Thus, Petitioner's Ground One (d) claim is a new claim and therefore procedurally defaulted.

As to Ground One (e), Petitioner did not argue on direct appeal or during his state habeas proceedings trial counsel was ineffective for failing to investigate a recording of a 911 call made after Petitioner was robbed by Messrs. Simmons and Mingledolph. While Petitioner argued appellate counsel was ineffective for failing to raise a claim of ineffective assistance against trial counsel for failing to object to the State withholding evidence of the 911 call, (doc. no. 11-12, p. 1), Petitioner did not raise an independent claim of ineffective assistance of trial counsel regarding the 911 call.

For a federal claim to be exhausted, the state court "must have had an opportunity to apply controlling legal principles to the facts bearing upon Petitioner's constitutional claim." Preston, 785 F.3d at 457-59 (quoting Kelley v. Sec't for Dep't of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004) (internal quotations omitted). Thus, although Petitioner raised a similar claim based on ineffective assistance of appellate counsel, the two claims would have required an analysis of different legal principles and facts. Specifically, the considerations regarding whether trial counsel or appellate counsel are different, as appellate counsel has greater leeway regarding non-frivolous issues. See Philmore, 575 F.3d at 1264 (explaining appellate counsel not required to raise every non-frivolous issue). Furthermore, the state

court would have had to determine whether there was prejudice at the appellate level for the ineffective assistance of appellate counsel claim as opposed to prejudice to the outcome of the trial for the ineffective assistance of trial counsel claim. Strickland, 466 U.S. at 694 (holding petitioner must show reasonable probability of different result of proceeding at trial level); Philmore, 575 F.3d at 1265 (holding prejudice at appeal is whether claim would have had reasonable probability of success on appeal). "[H]abeas petitioners may not present particular . . . instances of ineffective assistance of counsel in their federal petition that were not first presented to the state courts." Kelley, 377 F.3d at 1344 (citing Footman, 978 F.2d at 1211. Accordingly, Petitioner's Ground One (e) claim is a new claim and is therefore procedurally defaulted.

As to Ground Two (e), Petitioner did not argue during his state habeas proceedings appellate counsel was ineffective for "failing to investigate." While the basis for Petitioner's claim in his federal petition is somewhat unclear, it appears his ineffective assistance claims against both trial counsel and appellate counsel for "failure to investigate" concern the recording of the 911 call regarding the robbery of Petitioner that occurred before the shootout. (See doc. no. 12, pp. 6, 9.)

In Ground Two (e) of his federal petition, Petitioner clearly argues appellate counsel was ineffective for failing to look into the 911 recording as a basis for a claim of prosecutorial misconduct or a Brady violation on appeal. (Id. at 7-9.) However, Petitioner did not raise this ground during his state habeas proceedings. Instead, Petitioner only claimed appellate counsel was ineffective for failing to argue trial counsel was ineffective for failing to object to the State withholding exculpatory evidence. (Doc. no. 11-12, p. 1). Also,

while Petitioner raised an ineffective assistance of appellate counsel claim based on "failure to investigate" in his first amended petition, that claim concerns appellate counsel's failure to communicate with Petitioner generally, not specifically as to the 911 call. (Doc. no. 11-11, p. 4.) However, even if Petitioner were seeking to challenge appellate counsel's failure to communicate, Petitioner is not entitled to relief on that claim, as described in § III.A.2.d, supra. Thus, Petitioner's Ground Two (e) is a new claim and procedurally defaulted.

As to Ground Five (a), Petitioner did not challenge the jury instruction regarding malice murder in either his direct appeal or state habeas petitions. The Petitioner only challenged the jury instructions concerning party to a crime in his state habeas corpus petition. (Doc. no. 1-11, pp. 5-6.) Thus, Ground Five (a) in his federal petition is a new claim.

As to Ground Five (b), Petitioner did not raise a federal due process claim regarding the trial court's failure to dismiss a juror who had been a childhood friend of the victim's wife. Petitioner challenged the trial court's failure to dismiss the juror on direct appeal, but it is clear Petitioner's brief and the Supreme Court of Georgia's opinion were both based on state law grounds, not the Fourteenth Amendment Due Process clause. See Coe, 748 S.E.2d at 827; (doc. no. 11-8, pp. 128-31.) Although Petitioner raised a similar claim during his state habeas proceedings and referred to it as a "due process" claim, he never described the claim as a federal claim or cited any federal authority in support. (Doc. nos. 11-10, pp. 7-8; 11-11, p. 6.) Thus, Petitioner did not even hint to the state court he intended to raise a federal claim. See Preston, 785 F.3d at 457-59 (holding while petitioner need not use particular words to present federal claim to state courts, petitioner must put state court on

notice he intended to raise federal claim).

Here, it is clear the state habeas court was not put on notice of any federal basis for Petitioner's claim, as it determined the Georgia Supreme Court already decided the same issue, a state law issue, on appeal. (Doc. no. 11-13, p. 6.) Thus, as Petitioner failed to put the state court on notice of any federal basis for his claim either on direct appeal or during his state habeas proceedings, Petitioner's federal due process claim included in this petition is procedurally barred. If, on the other hand, Petitioner's claim is based on state law, Petitioner would not be entitled to federal habeas corpus relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Alston v. Dep't of Corr., Fla., 610 F.3d 1318, 1326 (11th Cir. 2010) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.").

As to Ground Five (c), Petitioner did not raise a due process claim based on the trial court's failure to sever Petitioner's trial either on direct appeal or during his state habeas proceedings. Petitioner challenged the trial court's failure to sever the trial, but, similar to Ground Five (b) above, it is clear from Petitioner's brief and the Supreme Court of Georgia's opinion Petitioner's challenge and the court's ruling were based on state law grounds. See Coe, 748 S.E.2d at 827; (doc. no. 11-8, pp. 131-32.) Additionally, while Petitioner claimed trial counsel was ineffective for failing to move to sever the trial, (doc. no. 11-11, p. 2), and appellate counsel was ineffective for "not properly presenting [the] severance issue to the Supreme Court," (doc. no. 11-12, p. 2), he did not raise a standalone due process claim regarding the trial court's failure to grant the motion to sever during the state habeas

proceedings.

As to Ground Five (d), Petitioner did not raise a due process claim contending the trial court incorrectly charged the jury regarding transferred intent. On appeal, Petitioner argued there was insufficient evidence to prove Petitioner caused the victim's death, and the Georgia Supreme Court noted, under the doctrine of transferred intent, it was irrelevant whether Petitioner attempted to shoot the victim or Mr. Mingledolph. Coe, 748 S.E.2d at 826. Further, Petitioner argued during his state habeas proceedings the trial court violated his due process rights by failing to prove Petitioner had the intent necessary to commit malice murder. (Doc. no. 11-10, p. 7.) However, Petitioner did not argue the trial court's jury instructions regarding transferred intent were incorrect.

As to Ground Five (e), Petitioner did not raise a due process claim the trial court erred by failing to give a jury instruction regarding prior difficulties after agreeing to do so. In his second amended state habeas petition, Petitioner argued appellate counsel was ineffective for failing to object to the trial court's failure to "charge the jury by constitutional law," (doc. no. 11-12, p. 3), and clarified at the habeas hearing he was referring to the jury instructions regarding prior difficulties, (doc. no. 1-1, p. 23). However, at no point did Petitioner attempt to raise a standalone due process claim regarding the lack of a jury instruction. Thus, the claim is procedurally barred.

As to Ground Five (f), Petitioner did not previously raise a federal due process claim asserting the trial court erred by failing to grant a mistrial. On direct appeal, Petitioner argued, based on state law, the trial court erred by failing to declare a mistrial after witnesses testified Petitioner was on parole and Petitioner did not testify. (Doc. no. 11-8, pp. 132-135.)

During the state habeas proceedings, Petitioner argued trial counsel was ineffective for failing to properly argue the issue on direct appeal. (Doc. no. 11-2, p. 4.) However, even assuming Petitioner intended his claim to have a federal basis, he did not raise the issue presently before the Court on direct appeal or during his state habeas proceedings.

Finally, as to Ground Five (g), Petitioner did not previously raise a due process claim the trial court erred by failing to "honor mutual combat doctrine" on either direct appeal or during state habeas proceedings. At the state habeas hearing, Petitioner argued there was insufficient evidence to prove malice murder based, in part, on the mutual combat doctrine. (Doc. no. 11-1, pp. 11-12.) However, he did not argue the trial court violated his due process rights in any way related to the doctrine.

Because the state habeas court denied the claims in Ground One (c) and Three under state procedural default rules, and the claims in Grounds One (d) and (e), Two (e), and Five are new claims, these claims are procedurally defaulted and provide no basis for federal habeas relief. See Boyd, 697 F.3d at 1336; McNair, 416 F.3d at 1305; Smith, 256 F.3d at 1139.

### 3. Petitioner Cannot Satisfy the Cause and Prejudice Standard to Justify Federal Review of His Defaulted Claims, and the Miscarriage of Justice Exception Does Not Apply

"A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default." Jones, 436 F.3d at 1304 (citing Wainwright v. Sykes, 433 U.S. 72, 97 (1977)). "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule."

Maples v. Thomas, 565 U.S. 266, 280 (2012) (internal quotation marks omitted). "Once cause is proved, a petitioner also must prove prejudice. He must show 'not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). For example, procedural default does not preclude federal habeas review when

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

Trevino v. Thaler, 569 U.S. 413, 423 (2013); Martinez v. Ryan, 566 U.S. 1, 13-14, 16-17 (2012).

Petitioner has presented no valid justification for failing to raise his defaulted claims at the proper time in his state proceedings, let alone something external to him that cannot be fairly attributed to him. Although Petitioner argues as to his Grounds One and Three claims he told Mr. Jones to raise those claims on appeal and Mr. Jones failed to do so, as discussed above, Petitioner has no valid ineffective assistance of appellate counsel claims. In addition, Petitioner has failed to show prejudice resulting from the default or that the claims are substantial. As to his Ground One (c) claim trial counsel was ineffective for failing to object to Mr. Simmons's testimony Petitioner robbed him a year before the shootout, Petitioner fails to specify on what basis the testimony would have been properly excluded at trial. As to

44

Ground One (d), Petitioner has not alleged any factual detail explaining why he contends trial counsel was ineffective for having poor ethics and lacking interest. As to his Ground One (e) claim trial counsel was ineffective for failing to request the 911 call, the Court determined in § III.A.2.b.i, <u>supra</u>, trial counsel was not ineffective.

As to his Ground Two (e) claim, appellate counsel was not ineffective for: (1) failing to raise a <u>Brady</u> challenge on appeal regarding the 911 call, as there was no <u>Brady</u> violation, <u>see</u> § III.A.2.b.i., <u>supra</u>; and (2) failing to communicate, <u>see</u> § III.A.2.d, <u>supra</u>. Similarly, as to his Ground Three claim, there was no <u>Brady</u> violation based on the prosecutor allegedly withholding the 911 call.

As to his Ground Five (a), (d), and (g) claims regarding the trial court's jury instructions, Petitioner has not specified why the instructions were erroneous and, to the extent they were, how they were so prejudicial they "'so infected the entire trial that the resulting conviction violates due process.'" <u>Ford v. Schofield</u>, 488 F. Supp. 2d 1258, 1329 (N.D. Ga. 2007) (quoting <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977)). Similarly, Petitioner's conclusory argument as to his Ground Five (e) claim regarding the trial court's failure to give an instruction on prior difficulties between the parties is insufficient to establish a due process violation, especially since failure to give an instruction is "less likely to be prejudicial than a misstatement of law." <u>Id.</u>

Petitioner would not be entitled to relief on his Ground Five (b) claim the trial court erred by failing to dismiss a juror, who was a childhood friend of the victim's wife, because, after the issue was brought before the trial court's attention, the juror testified she could still be fair and impartial, had not seen or spoken to the victim's wife since at least 1993, did not

know the victim, and had not seen any of the victim's wife's family members. (Doc. no. 11-4, pp. 237-40.) Thus, there was no indication of actual or implied bias sufficient to establish a due process violation. Nichols v. Thomas, 788 F. Supp. 570, 571 (N.D. Ga. 1992).

As to the Ground Five (c) claim the trial court erred by failing to sever the trial, Petitioner has not shown the trial court's refusal rendered the trial fundamentally unfair, as he has not alleged he suffered compelling prejudice based on evidence presented by his codefendant. Slaughter v. Gramiak, No. 5:17-cv-90, 2018 WL 3651588, at *8 (N.D. Ga. Aug. 1, 2018) (discussing four-part test for when trial court's refusal to sever is unconstitutional) (citing Smith v. Kelso, 863 F.2d 1564, 1568, 1571 (11th Cir. 1989)).

Finally, Petitioner's Five (f) claim the trial court erred by failing to grant a mistrial after witnesses testified Petitioner was on parole is not substantial because: (1) the Georgia Supreme Court determined the testimony did not warrant a mistrial, Coe, 748 S.E.2d at 828; and (2) there was no due process violation because Petitioner cannot show substantial prejudice. See Locke v. Sec'y Fla. Dep't of Corr., No. 5:15cv55/RV/EMT, 2016 WL 3647795, at *39 (N.D. Fla. May 12, 2016) ("'A defendant is entitled to a mistrial only if he shows substantial prejudice – that is, that absent the prejudice, the outcome of the trial would have been different.'") (quoting United States v. Chavez, 584 F.3d 1354, 1362 (11th Cir. 2009)) adopted by, 2016 WL 3647875 (N.D. Fla. June 30, 2016). Accordingly, Petitioner has failed to demonstrate the cause and prejudice necessary to overcome his procedural default.

For all of the above reasons, none of the defaulted claims have any merit and are insubstantial. Even if all of them had merit, the failure to correct the errors identified by

Petitioner did not rise to the level of actual prejudice by working to his actual and substantial disadvantage in such a way as to infect his entire trial with error of constitutional dimension.

"Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice." Jones, 436 F.3d at 1304 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). The narrow fundamental miscarriage of justice exception encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of the crime. Murray, 477 U.S. at 496; see also Johnson, 256 F.3d at 1171 ("This exception is exceedingly narrow in scope, as it concerns a petition's 'actual' innocence rather than his 'legal' innocence."). In McQuiggin v. Perkins, the Supreme Court held that this exception survived AEDPA's passage but "applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]." 569 U.S. 383, 395 (2013) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). Petitioner does not argue, let alone submit any evidence, that he is probably, factually innocent of the crimes of which he was convicted. To the contrary, all of his arguments are based on legal theories of alleged error. Accordingly, Grounds One (c), (d), and (e), Two (e), Three, and Five in the instant § 2254 petition have been defaulted and provide no basis for federal habeas relief.

### C. Petitioner's Ground One (a) and (b) Claims are Entitled to *De Novo* Review

"[R]esting between AEDPA deference and procedural default is a third path. If the state court did not reach the merits of a petitioner's claim based on some ground that is not

adequate to bar federal review, we must review the claim *de novo*.  <u>Williams v. Alabama</u>, 791 F.3d 1267, 1273 (11th Cir. 2015) (citing <u>Cone v. Bell</u>, 556 U.S. 449, 472 (2009)).  Thus, "a state court's refusal to re-address the merits of a claim, on the grounds that the claim has already been given full consideration in some previous proceeding imposes no barrier to federal review . . . even where . . . a state court *wrongly* finds that a claim has already been raised and addressed."  <u>Id.</u> at 1274-75 (citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 704 n.3 (1991); <u>Cone</u>, 556 U.S. at 467).

As discussed in detail below, the state habeas court incorrectly determined Petitioner's claims raised here in Grounds One (a) and (b) were procedurally barred because the Georgia Supreme Court decided the issues on appeal.  (Doc. no. 11-13, pp. 2-6.)  Accordingly, the Court reviews these claims *de novo*.

### 1.    Trial Counsel Did Not Render Ineffective Assistance of Counsel by Failing to File a Motion to Sever

In Ground One (a), Petitioner argues trial counsel was ineffective for failing to file a motion to sever the trial, and, as a result, Petitioner was not able to raise the issue on direct appeal.  (Doc. nos. 1, p. 5; 12, pp. 5-6.)  The state habeas court held the claim was precluded from review because the Georgia Supreme Court already ruled on the issue.  (Doc. no. 11-13, p. 3.)  However, Petitioner did not raise a claim of ineffective assistance of counsel on direct appeal; he only argued the trial court abused its discretion by failing to sever the trial.  <u>Coe</u>, 748 S.E.2d at 827.  Because the state court wrongly determined the claim had already been raised and addressed, the Court reviews Petitioner's claim *de novo*.  <u>Williams</u>, 791 F.3d at 1273-75.  Nevertheless, Petitioners claim is meritless because he cannot show prejudice.

As Petitioner indicates, trial counsel for Mr. Mingledolph made an oral motion to sever the trial based on the codefendants having antagonistic defenses. (Doc. no. 11-4, pp. 133-36.) The trial court denied the motion. (Id.) Petitioner's trial counsel did not make an independent motion to sever. On direct appeal, the Georgia Supreme Court first held Petitioner could not raise the issue because Petitioner's trial counsel failed to move to sever the trial. Coe, 748 S.E.2d at 827. Nevertheless, the court then assumed Petitioner actually moved to sever his trial and looked to the merits of Petitioner's argument the trial court erred by failing to sever the trial. Id. The court determined the trial court did not abuse its discretion by failing to sever the trial because antagonistic defenses alone are not sufficient to mandate severance and Petitioner could not show specific prejudice occurred by the introduction of evidence that would not have been admitted in a separate trial. Id.

Petitioner cannot show he was prejudiced either during trial or on appeal by trial counsel's failure to move to sever. First, even if trial counsel moved to sever the trial, the trial court would have denied the motion, just as it denied the codefendant's motion, as it would have been based on the same argument the codefendants' defenses were antagonistic. Second, even if trial counsel moved to sever, the trial court denied the motion, and Petitioner raised the issue on appeal, the Georgia Supreme Court would have found the trial court did not abuse its discretion by failing to grant the motion to sever, just as it did in its order. Accordingly, trial counsel was not ineffective for not asserting a losing motion, there is not a reasonable probability the result of the proceedings would have been different had trial counsel made a motion to sever, and Petitioner is not entitled to relief on this ground. Strickland, 466 U.S. at 694.

**2.      Trial Counsel Was Not Ineffective for Failing to Object to Testimony About Petitioner Being on Parole**

In Ground One (b), Petitioner argues trial counsel rendered ineffective assistance of counsel by failing to object to witnesses testifying Petitioner was on parole.  (Doc. nos. 1, p. 5; 12, p. 6.)  As with Ground One (a) above, the state habeas court held the claim was precluded from review because the Georgia Supreme Court already ruled on the issue.  (Doc. no. 11-13, pp. 4-5.)  However, Petitioner did not raise a claim of ineffective assistance of counsel on direct appeal; he only argued the trial court erred by not declaring a mistrial.  Coe, 748 S.E.2d at 827-28.  Because the state court wrongly determined the claim had already been raised and addressed, the Court reviews Petitioner's claim *de novo*.  Williams, 791 F.3d at 1273-75.  Nevertheless, Petitioners claim is meritless because he cannot show deficient performance or prejudice under Strickland.

First, Petitioner cannot show deficient performance because trial counsel did, in fact, contemporaneously object to LaToya Jones's testimony regarding Petitioner being on parole and moved for a mistrial following jury instructions based on the testimony.  Lewis Harmon first mentioned Petitioner was on parole, testifying, "Willie had to go to his parole officer that morning, and I dropped him off at his mama's house to go to his parole officer."  (Doc. no. 11-4, p. 211.)  Trial counsel did not object to Mr. Harmon's testimony.  However, witness Ms. Jones later testified she and Mr. Harmon took Petitioner to his mother's house "so he could go see his parole officer," after which trial counsel objected and asked to approach.  (Doc. no. 11-5, pp. 7-8.)  After an unrecorded bench conference, questioning of the witness began again without comment from counsel or the court.  (Id. at 8.)  The trial

court put the reason for the sidebar conference on the record the next day of trial, and trial counsel acknowledged she did not want a limiting instruction at the time. (Id. at 45.)

After the close of evidence and jury instructions, trial counsel renewed her objection and moved for a mistrial. (Id. at 207.) The trial court stated the parties agreed during the earlier sidebar an instruction was not necessary, and Petitioner's counsel acknowledged this was the case. (Id. at 208.) Trial counsel further explained she did not want a limiting instruction and did not move for a mistrial at the time because she did not know whether Petitioner would testify, which would have made the objection moot, and she did not want to waste the court's resources if the objection would be rendered moot by Petitioner testifying. (Id.) However, trial counsel argued a mistrial was appropriate because Petitioner did not testify. (Id.) The court noted and overruled trial counsel's objection. (Id. at 208-09.)

Under Georgia law, a defendant's character is not an issue in the guilt-innocence phase of a trial unless the defendant himself makes it so. Farley v. State, 458 S.E.2d 643, 645 (Ga. 1995) (citing Childs v. State, 357 S.E.2d 48, 54 (Ga. 1987)). Thus, trial counsel could have reasonably believed if Petitioner testified and made his character an issue, the objection would have been moot and, as a result, decided not to press the issue until after the close of evidence. Petitioner has not shown no competent counsel would have made the same strategic decision in this situation. Strickland, 466 U.S. at 690-91.

Additionally, Petitioner cannot show prejudice as to this claim because he cannot establish there is a reasonable probability the result of the proceeding would have been different if trial counsel requested an instruction or moved for a mistrial at the time the testimony was elicited instead of after jury instructions. Even if trial counsel's performance

was deficient, there was overwhelming evidence of Petitioner's guilt presented at trial, and Petitioner has not demonstrated what, if any, effect the brief references to Petitioner being on parole had on the jury. Hatcher, 541 F. App'x at 954-55. Although Petitioner argues the passing mentions were evidence of bad character, no details as to Petitioner's status as a parolee were elicited, and the testimony consists of only four lines in more than two hundred pages of testimony in the trial transcript. In short, there is no indication the testimony as to Petitioner's parole status had any effect whatsoever on the outcome of Petitioner's trial. Additionally, the Georgia Supreme Court decided on direct appeal the passing reference to Petitioner's parole did not warrant granting a mistrial. Coe, 748 S.E.2d at 828 (citing Lanier v. State, 702 S.E.2d 141, 144 (Ga. 2010)). Accordingly, Petitioner cannot show prejudice and his ineffective assistance of trial counsel claim is without merit.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 12th day of December, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA